FIRST NAT. BANK OF CHATTANOOGA et al. v. BELL.

BELL et al. v. FIRST NAT. BANK OF CHATTANOOGA et al.

Nos. 7907, 7908.

Circuit Court of Appeals, Sixth Circuit.

June 29, 1938.

Charles C. Moore, of Chattanooga, Tenn. (Charles C. Moore, of Chattanooga, Tenn., on the brief), for First Nat. Bank.

Thomas S. Myers, of Chattanooga, Tenn. (Thomas S. Myers, J. B. Sizer, and Sizer, Chambliss & Kefauver, all of Chattanooga, Tenn., on the brief), for Ralph W. Bell and others.

Before HICKS, SIMONS, and ALLEN, Circuit Judges.

SIMONS, Circuit Judge.

The controversy presented by the appeal and cross-appeal is with respect to the liability of a closed national bank under an agreement with intervenors in liquidation proceedings to handle their loans and mortgages and in respect to the measure of damages if the contract was breached by the bank.

The intervening petitioners, non-residents of Tennessee, had inherited from their father certain mortgages on real estate in Chattanooga originally acquired from the bank. It being necessary that a local representative look after their interests in the property, each of them made a separate but identical contract with the bank, the material portions of which are as follows:

"The First National Bank of Chattanooga, Tennessee, as agent for handling your loans and mortgages, makes the following guarantee to you:

"1st. The First National Bank of Chattanooga, Tennessee, guarantees that it will not let any lien run out or become ineffective which secures notes or mortgages on real estate securing said loans which are owned by you and which are handled by us as your agent.

"2nd. We will see to it that all delinquent taxes are paid promptly after said taxes become delinquent on any mortgaged properties securing your loans or mortgages."

The intervening petitions were filed in a general creditors' proceeding after its removal from the state court to the court below upon the appointment of a receiver for the bank by the Comptroller of the Currency. The receiver became a party to the proceeding. Upon the overruling of a motion made by him to dismiss the petitions on the ground that the obligations undertaken in the contracts were beyond the power of a national banking association, the petitions were referred to a standing master in pursuance of a general order to hear proofs and report on claims.

The master found that the mortgages and notes of the petitioners had been left in the possession of the bank, which had a regular department for the purpose of collecting rents on mortgaged properties and seeing that taxes were paid by borrowers; that while no direct consideration was paid to the bank for that service, the bank realized its compensation from borrowers, who were charged a fee for the making of loans and extensions and renewals thereof, and by carrying the investor's account, and that this was a very profitable business for the bank up to the time of its insolvency. He also found that the taxes accruing on the property covered by the petitioners' mortgages were not paid but were permitted to become delinquent and that penalties and interest accrued thereon; that eventually the mortgages were returned to the petitioners and were by them foreclosed, the property in each case being bid in for less than the mortgage debt and subject to liens for unpaid taxes, penalties and interest; that the bank had given no explanation for its failure to see that the taxes were paid when due, had failed to notify the petitioners of their default, and was unable to show that the mortgage debtors were financially unable to pay the taxes if they had been requested to do so. He found the bank liable for all the defaulted taxes involved, together with penalties and interest thereon. The court reduced the award to the penalties and interest accumulated on the defaulted taxes, and a stipulation having been entered into as to their amounts, a decree was entered directing their payment, with interest from the date of the filing of the petitions.

The appellants challenge the decree on the ground that the contract was ultra vires, that it had not been breached, and that the petitioners had not suffered injury. The cross-appellants complain that the award

should have included the taxes as well as the interest and penalties.

■ A preliminary question must be disposed of. It is the contention of the cross-appellants that the report of the master having been on file more than twenty days and no exceptions having been taken to it, it should have been in all respects confirmed under Equity Rule 66, 28 U.S.C.A. following section 723. But the questions here involved are all, as we understand them, questions of law, and the rule is that if the master by his report states the facts correctly but errs as to his legal conclusions, the party against whom he errs is not required to except to the report but may bring the legal questions to the attention of the court. Celluloid Mfg. Co. v. Cellonite Mfg. Co., 40 F. 476, C.C.N.Y.; Smith v. Seibel, 258 F. 454, 456, D.C.Iowa; Holman v. Cross, 6 Cir., 75 F.2d 909, 913. The court had power to rule upon the legal questions involved.

The bank was a permittee of the Federal Reserve Board under the power conferred upon it by § 248(k), T. 12, U.S.C., 12 U.S.C.A. § 248(k). This section empowers the Federal Reserve Board by special permit to grant to national banks applying therefor, the right to act as trustee, executor, administrator, etc., or "in any other fiduciary capacity in which State banks, trust companies, or other corporations which come into competition with national banks are permitted to act under the laws of the State * * * ."

■ It will serve no useful purpose, as will presently appear, to cite or discuss the statutes of Tennessee with respect to whether they empower a bank or trust company to guarantee the payment of bonds or mortgages or empower them to answer for the debt or default of another, and the power of the bank to act as agent is not questioned. It is fair interpretation of the present contract that it does not require the bank to pay defaulted taxes out of its own funds. It undertook to act as agent for the petitioners in the handling of loans and mortgages and its duty under the second paragraph of the contract was but to "see to it" that all delinquent taxes were promptly paid after they became delinquent. It is true that the bank undertook to guarantee that it would not let any lien run out or become ineffective which secured notes or mortgages owned by the petitioners and handled by it as their agent. So it is urged

that when the bank failed to pay the taxes and the tax liens became prior charges upon the mortgaged real estate, the bank let the mortgage liens become ineffective to the amount of the taxes. But under familiar rules the specific obligation of the bank under the second paragraph of the contract with respect to delinquent taxes must limit its general obligation, and it is not in terms a guaranty. While a similar promise, standing alone, might in other circumstances be interpreted as a guaranty, yet the deliberate phrasing of the obligation in its present context clearly indicates that the second paragraph was not intended as a guaranty.

■ The bank's obligation being that of an agent, and it having failed to require the mortgagors to pay the taxes or to notify the mortgagees of the default so that they could pay them and avoid interest and penalties, breached the contract and is liable for the damages thereby occasioned. The court we think properly measured the loss sustained when it granted a decree for the interest, costs and penalties incurred by reason of the bank's failure of duty.

■ The contention that the contract was usurious because the bank was thereby empowered to collect a sum in excess of legal interest from mortgagors in consideration of renewals or extensions of their loans must be rejected. There was no return to the lender of more than the legal interest, and the bank in negotiating renewals acted as agent of both borrower and lender. A brokerage commission in excess of legal interest is not usury under Tennessee law. Mallory v. Columbia Mortgage Co., 150 Tenn. 219, 263 S.W. 68.

■■ The decree allowed interest from the date the petitions were filed, but interest upon the obligations of a closed bank should be allowed only to the date of the receivership. Anderson v. Missouri State Life Ins. Co., 6 Cir., 69 F.2d 794. Nor does the fact that resort to suit was necessary for the petitioners to establish their claims entitle them to interest from the date of dividends paid by the receiver. White v. Knox, 111 U.S. 784, 4 S.Ct. 686, 28 L.Ed. 603.

The cross-appeal is dismissed. The decree will be amended to provide that interest be computed only to the date of the bank's closing, and as so amended it is affirmed.