267 So.2d 427

**STATE of Alabama, By and Through the STATE BOARD FOR REGISTRATION OF ARCHITECTS, etc.**

**v.**

**Edward A. JONES, Jr.**

**I Div. 700.**

Supreme Court of Alabama.

Sept. 28, 1972.

Rehearing Denied Oct. 26, 1972.

Joseph J. Boswell, Mobile, for appellee.

Joseph D. Phelps, Montgomery, for appellant.

William J. Baxley, Atty. Gen., and J. Victor Price, Asst. Atty. Gen., for Ala. State Board for Registration for Professional Engineers and Land Surveyors, amicus curiae.

Gilbert D. Spindel, Atlanta, Ga., for National Engineers Legal Fund, amicus curiae.

Milton F. Lunch, Washington, D. C., for Ala. Society of Professional Engineers, amicus curiae.

HARWOOD, Justice.

The State of Alabama, by and through the State Board for the Registration of Architects, a State agency, filed a bill in equity in the Circuit Court of Mobile County seeking to enjoin the respondent, Edward A. Jones, Jr., from holding himself out as an architect, and from practicing architecture in the State of Alabama.

The bill averred that the respondent was not registered as an architect in this state; but that he has on numerous occasions practiced architecture in the State of Alabama within the meaning of and as defined by the statute, (Title 46, Chapter 2, Code of Alabama 1940, as amended), and particularly he has so engaged in the following instances:

(The bill then sets out some 13 instances in which it is alleged that the respondent had planned, designed, made, or stamped working drawings of various types of buildings including churches, medical offices, washeterias, store buildings, etc.)

In each of the paragraphs setting out a particular building plan it is averred that the plans, designs and working drawings made by the respondent for that particular building did not bear the seal or signature of an architect registered to practice in this state, but were prepared and stamped by the respondent, *"who thereby held himself out to be an architect and who did thereby practice architecture in the State of Alabama."* (Emphasis Supplied)

In his answer the respondent admitted he had prepared the plans described in the bill, but averred he had done so as a professional engineer duly registered in the State of Alabama, and that all architectural services performed by him, or ever performed by him, or his employees under his supervision, were purely incidental to his engineering practice.

At the hearing below, the plans for the thirteen buildings prepared by the respondent were introduced in evidence by the complainant. These plans are each signed, "Edward A. Jones-Engineer, Ala. Reg. No. 2574, Mobile, Ala."

Several expert witnesses, after examining the plans introduced in evidence, testified in behalf of the complainant or of the respondent. We have carefully read this testimony. On direct examination, their testimony was conclusionary to the effect that the plans were architectural in nature (witness for complainant), or that the plans were in the field of professional engineering (witness for respondent).

Cross examination of these witnesses revealed the difficulty, if not impossibility, of demonstrating the demarcation between the practice of architecture and engineering. Two of the complainant's expert witnesses, who had given their opinions as to what constituted the practice of architecture, testified on cross examination that their concepts of what constituted the practice of architecture were their own personal opinions independent of any statutory provisions touching on the question.

We do not think any useful purpose would be served by setting out in detail the testimony of the witnesses in regard to the differences between the practice of engineering and of architecture. It is to a large degree esoteric. Cross examination, we think, showed that the functions of the two professions so overlap that neither can be satisfactorily defined in a way to draw a clear line of demarcation between the two. Certainly our statutes do not do so.

After a hearing, this cause was submitted to the court on the pleadings and testimony heard in open court.

The chancellor thereafter rendered a decree in which he found that the respondent, at all times material to the allegations

made in the bill of complaint, was a duly licensed and registered professional engineer in the State of Alabama, and that he has never held himself out, directly or indirectly, as an architect, and that all professional services rendered by the respondent in preparing plans and working drawings made the basis of this suit were authorized under Title 46, Chapter 7 of the Code of Alabama, as last amended (Engineering Statutes).

The court then adjudged and decreed that the injunction sought by the complainant be denied, and the cause be dismissed with prejudice.

For convenience, we will refer to the material portions of our statutes and amending Acts by reference to the 1940 Code of Alabama, as amended, by Acts appearing in the Pocket Parts thereof.

Sections 8 through 20, Title 46, Code of Alabama, pertain to architects. Section 8 of said Title provides that "In order to safeguard life, health and property no person shall practice architecture in this state, or use the title 'architect' * * *" unless he be registered as an architect.

In Section 9 of Title 46, Code of Alabama 1940, (Pocket Part), the practice of architecture is defined as follows:

"* * * any person who shall be engaged in the planning or design for the erection, enlargement or alteration of any building or buildings for others, or furnishing architectural observation and inspection of the construction thereof shall be deemed to be practicing architecture * * *."

Section 9 further provides that:

"* * * Nor shall anything in this chapter be held to prevent registered professional engineers or their employees or subordinates under their responsible supervising control from performing architectural services which are purely incidental to their engineering practice, provided, however, that registered architects or their employees or subordinates

under their responsible supervising control may perform engineering services which are purely incidental to their architectural practice. * * *"

Sections 128(1) through 128(24), Code of Alabama 1940, (Pocket Part), relate to engineers and land surveyors.

The practice of engineering, is defined as follows:

"The term 'practice of engineering' as used in this chapter shall mean any professional service *or creative work* requiring engineering education, training and experience and the application of special knowledge of the mathematical, physical and engineering sciences to such professional services or creative work as consultation, investigation, evaluation, *planning the use of lands* and waters, planning, design, *and supervision of construction for the purpose of assuring compliance with specifications and design,* in connection with any public or private utilities, structures, *buildings,* machines, equipment, processes, works, or projects wherein the public welfare or safeguarding of life, health, or property is involved. The term shall not, however, include the practice of architecture except such architectural work as is incidental to the practice of professional engineering; * * *." (Italics Ours)

At the outset, it is to be noted that the Codal provisions regulating the professions of architecture and engineering are overlapping, and while attempting to distinguish practice of the two professions, have, by the wording of the statutes defining the practice of the two professions created only distinctions without differences.

Each profession was regulated for the purpose of safeguarding life, health and property. Each relates to the application of professional knowledge to the planning and designing of structures, and supervising the erection thereof.

The question is further obfuscated by the provisions to the effect that architects

may practice engineering and professional engineers may practice architecture if the practice of the allied profession is incidental to the practice of the profession for which the practitioner has been registered.

It is the appellant's contention that since the Legislature has recognized engineering and architecture as distinct professions by separate statutory categories pertaining to each, this recognition cannot be destroyed because each may practice the other if incidental to the practice of the one. But we are concerned here with permissible conduct under the respective statutes, and particularly, with the statute pertaining to the practice of engineering.

 A statute must be construed as a whole, and every word in it made effective, if possible, Hawkins v. Louisville & Nashville R. R. Co., 145 Ala. 385, 40 So. 293. Generally, statutes which relate to closely allied subjects may be regarded as in pari materia. City of Birmingham v. Southern Express Co., 164 Ala. 529, 51 So. 159. We are clear to the conclusion, both under the terms of the statutes defining architecture and those defining engineering, and the testimony of the witnesses for the respective parties, the two professions are closely related, and the statutes pertaining to each profession are in pari materia. Setting forth these observations furnishes little aid in disposing of the question now being considered, i. e., that each may practice the other profession in so far as the practice of the other profession is incidental, or purely incidental, the one to the other.

Because it is virtually impossible under our statutory definitions to distinguish between the practice of engineering and architecture, groping in this twilight zone to determine what is incidental to each profession presents questions impossible of any harmonious solution. The testimony of the expert witnesses on this question furnished little of real value in solving this question.

We think that in the background of the issues here presented, what architectural work is permissibly incidental to engineering, and vice versa, cannot be based on any percentage basis.

 In South Carolina Electric and Gas Co. v. South Carolina Public Service Authority, 215 S.C. 193, 54 S.E.2d 777, we find the following statement which we consider applicable to the question here presented:

"* * * Accordingly, an incidental power may be defined to be one that is directly and immediately appropriate to the execution of the specific power granted, and not one that has merely some slight or remote relation to it. * * *"

 Appellant's assignments of error 1, 2, 3, 6, 7 and 8 charge error in various ways in the entry of the decree denying the prayer for injunctive relief, and in the action of the chancellor in finding that the respondent had not held himself out as an architect, but on the other hand, had engaged in the practice of engineering within the contemplation of our statutes regulating the practice of that profession.

There are innumerable cases pertaining to the question now under review. An apt summary of the holding of what appears to be a majority of the courts of this country is set forth in an annotation in 82 A.L.R. 2d, at p. 1016, as follows:

"* * * The courts generally conclude that where either a licensed architect or a licensed engineer performed services which could properly be regarded as within the reach of the statute licensing his profession and also within the statute licensing the other profession, he performed such services under the statute under which he was licensed and was not affected by the fact that they came incidentally within the purview of the other licensing statute."

We will not burden this opinion with an analysis of the numerous decisions on the point now under consideration other than

to set forth the following quotation from the opinion of the District Court of Appeal of Florida, Fourth District, found in Verich v. Florida State Board of Architecture, 239 So.2d 29, at p. 31, first noting that the Florida statutes regulating the practice of architecture and the practice of engineering are to all intents and purposes identical with our statutes. The Florida court wrote:

"If the planning and design of a building and the furnishing of supervision of its construction are functions which are encompassed solely within the practice of architecture, then professional engineers are prohibited from engaging in such functions unless incidental to their engineering practice. But paradoxically, the practice of professional engineering expressly includes the planning and design of buildings and the supervision of their construction. Thus, the apparent conflict can only be resolved by concluding that the statutes mean a registered architect can plan and design and supervise construction of a building as the practice of architecture and a registered professional engineer can plan and design and supervise construction of a building as a professional engineer. Of course, the professional engineer cannot represent himself as being an architect nor can the architect represent himself as being a professional engineer."

After consideration of the controlling statutes, the evidence presented below, and the legal principles governing, we hold that no reversible error should be posited on assignments 1, 2, 3, 6, 7 and 8.

■ Appellant's assignment of error No. 11 asserts error in the action of the court in overruling its objections to the following question propounded to the respondent Jones on his direct examination:

"Let me ask you something else before we go any further, since you graduated from the University of Oklahoma, from that time until the present date, have you ever held yourself out to the public as being an architect or have you ever used the title architect?"

The ground of objection interposed to this question was that it was invasive of the province of the court.

In argument in support of this assignment, the appellant relies largely upon Low v. Low, 255 Ala. 536, 52 So.2d 218, which was an action to remove a cloud upon title to land, the cloud being an executed deed handed to the grantee but allegedly, with no intention of any legal delivery of the same. The complainant was permitted to testify over objection as to his *intention* at the time of delivery of the deed. This court held that admission of such testimony required reversal of the judgment in that it called for direct testimony as to the complainant's motive, purpose or other mental operation at the time.

It is to be noted that in Low, the question specifically inquired as to the *intention* of the witness. In the present case the bill asserted the respondent had held himself out to be an architect by stamping the plans received in evidence.

The respondent's answer denied such allegation, and asserted that the preparation of the plans were incidental to his work as a duly registered engineer.

The question involved in this assignment called for an answer involving a fact, not an intention, nor a mental operation. We find no merit in assignment of error No. 11.

■ Appellant's assignment of error 10 asserts error in the action of the trial court in restricting the admission of a building permit issued on the basis of plans prepared by the respondent for the construction of a medical clinic or office. It is appellant's contention that the permit was a public record required to be kept, and as such, must be received in all courts under the provisions of Section 393, Title 7, Code of Alabama 1940.

The building permit was offered through Mr. John H. Jones, Deputy Director of the

Building Inspection Services of the City of Mobile. On examination of Mr. Jones, it was shown that the permit was actually issued by B. E. Adair, who was in charge of the permit issuing desk. It was further shown that building permits were on printed forms and that Mr. Adair wrote the respondent's name before the printed word "Architect" as it appears on the form. Upon objection being interposed to the admission of the permit, the court stated he would admit the permit if the word "Architect" were stricken as it appears after respondent's name.

Mr. Jones, the Deputy Director, further testified that building permits are uniformly issued on the basis of plans submitted by either registered architects or registered engineers.

It was stipulated by the respondent that the plans on which the building permit for the medical clinic was issued were prepared by the respondent. These plans, however, were signed by the respondent as a registered engineer.

Appellant contends that the court erred in refusing to admit the permit unless the word "Architect" was stricken therefrom, in that the permit with the word "Architect" printed thereon tended to show that the respondent held himself out as an architect.

Such evidence would be pure hearsay; the respondent did not sign the permit form. His name was placed there by Adair. Even if the permit had been admitted, the court could not have properly considered it as indicating that the respondent by any act of his own had held himself out as an architect. Cotton States Life Ins. Co. v. Crozier, 218 Ala. 173, 118 So. 327.

Therefore, even if by hypertechnical reasoning the permit should have been admitted, its only evidentiary value would have been to show that the permit was issued on the plans signed by the respondent. This was stipulated. The appellant could not have probably been harmed in any substantial right by the court's ruling in this instance. Supreme Court Rule 45. No merit, therefore, attaches to assignment of error 10.

Some twenty of appellant's assignments of error relate to the action of the court in sustaining respondent's objections to questions addressed to the respondent, or to Lorenzo Pollard, a former teacher of mechanical drawing in the Mobile County schools. Pollard, an employee of the respondent, had done some of the "pure drafting," under the respondent's supervision and direction, on some of the plans prepared by the respondent, and specifically described in the complaint.

The appellant's questions to these two witnesses to which objections were sustained sought to elicit testimony as to their contacts with respondent's client, consultations regarding the building plans, the agreements between the respondent and the client, the amount of fees charged by the respondent, and whether the respondent contacted the clients or they contacted him.

It is to be recalled that the complaint averred that in some thirteen specifically described instances the respondent had prepared building plans which did not bear the name or seal of a registered architect, but "were prepared or stamped by the respondent, or under his responsible supervision and control, *who thereby held himself out to be an architect and who did thereby practice architecture in the State of Alabama.*" (Emphasis Ours)

As thus stated in the complaint, the respondent holding himself out as an architect arose solely from his preparation of the described plans. These, of course, he had stamped and signed as a registered engineer.

It would seem that the averments of the complaint would limit the evidence as to the respondent holding himself out as architect to the preparation of the plans, and render irrelevant evidence beyond the allegations of the complaint.

Even so, if the acts of the respondent were within the allowable scope of his practice of engineering, the questions sought evidence of no relevancy to establish that the respondent was practicing architecture. The determination of whether evidence is relevant is largely within the discretion of the trial court. Bradley v. Jones, 282 Ala. 331, 211 So.2d 465; Roan v. Smith, 272 Ala. 538, 133 So.2d 224.

Several other assignments of error are argued in appellant's brief. We have considered these assignments and have concluded they present no reversible error, and that to discuss these assignments would be an unnecessary lengthening of this already overlong opinion.

The decree of the lower court is due to be, and hereby is, affirmed.

Affirmed.

HEFLIN, C. J., and MERRILL, COLEMAN, BLOODWORTH, MADDOX, McCALL and SOMERVILLE, JJ., concur.